# In the United States Court of Federal Claims

No. 17-744C

(E-Filed October 16, 2017)[1]

| | |
|---|---|
| T SQUARE LOGISTICS SERVICES CORP., Plaintiff, v. THE UNITED STATES, Defendant. | Motion to Dismiss; Standing; Pre-award Bid Protest; Motion for Judgment on the Administrative Record; Waiver of Informality or Minor Irregularity |

Richard B. Oliver, Los Angeles, CA, for plaintiff. J. Matthew Carter, Los Angeles, CA, of counsel.

Veronica N. Onyema, Trial Attorney, with whom were Chad A. Readler, Acting Assistant Attorney General, Robert E. Kirschman, Jr., Director, and Douglas K. Mickle, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant.

OPINION

CAMPBELL-SMITH, Judge

This pre-award bid protest involves a solicitation for a variety of support services at Sheppard Air Force Base in Texas. See Pl.'s Compl., ECF No. 1 at 1. In particular, plaintiff takes issue with the manner in which defendant applied the delivery requirements for its proposal. See id. at 8-11. Plaintiff has moved for judgment on the administrative record in its favor. See Pl.'s Mot. for J. on the Admin. R., ECF No. 19. Defendant has moved the court to dismiss plaintiff's complaint, or in the alternative to

[1] This opinion was issued under seal on September 22, 2017. Pursuant to ¶ 5 of the ordering language, the parties were invited to identify source selection, proprietary, or confidential material subject to deletion on the basis that the material was protected/privileged. No redactions were proposed by the parties. Thus, the sealed and public versions of this opinion are identical, except for the publication date, this footnote, and several typographical errors.

grant judgment on the administrative record in the government's favor. See Def's Mot. to Dismiss, ECF No. 20. For the following reasons, plaintiff's motion is **GRANTED**, and defendant's motions are **DENIED.**

I. Background

The facts of this case are largely undisputed. On March 17, 2017, defendant issued a solicitation seeking bids for "a broad array of base supply, vehicle operations, and vehicle maintenance services" at Sheppard Air Force Base in Texas. ECF No. 1 at 5. All offerors were required to submit both paper copies of their bids, and an identical electronic copy on a compact disc, no later than 4:00 p.m. on May 5, 2017. See id. at 6-7, 9. See Administrative Record, (AR) at 133 ("The electronic version shall be submitted on a compact disc (CD).").

Plaintiff's proposal was scheduled to be delivered by Federal Express. See id. at 9. At approximately 12:00 p.m. on May 5, 2017, Federal Express notified plaintiff that the delivery time was delayed due to inclement weather. See id. Upon learning of the delay, plaintiff contacted a T Square employee located at Sheppard Air Force Base, and informed her that, "pending further direction from the Air Force, she might be required to print out paper copies" of plaintiff's submission for timely delivery to the appropriate office. See id. Plaintiff also contacted, by email, the contracting officer and the contract specialist working on the solicitation to inform them of the anticipated FedEx delay and to deliver, as an attachment to the email, an electronic copy of its proposal. See id. The contract specialist responded to news of the delay, by email, stating that it was "not a problem, we understand that FedEx deliveries are beyond your control. Your receipt from FedEx shows that you shipped your proposal prior to the due date/time so we will be able to accept the hard copies when they arrive, even if FedEx delivers them after 4:00 pm today." See id. at 10 (citing to ECF No. 1, Ex. 1).

In reliance on the contract specialist's assurances, plaintiff directed its employee not to print and deliver the hard copies of the proposal. See id. 10-11. Federal Express delivered plaintiff's proposal at approximately 11:34 a.m. on May 8, 2017. See id. at 11. On May 16, 2017, defendant rejected plaintiff's proposal as untimely because the paper copies and the compact disc were not delivered by 4:00 p.m. on May 5, 2017. See id. The rejection letter read as follows:

> 1. This is to advise that your proposal was received by our office on Monday 8 May 2017 at 11:35 AM; after the 5 May 2017 at 4:00 PM deadline for receipt of proposals by 82 CONS.
>
> 2. An email containing an electronic copy of the proposal was received 5 May 2017 at 2:06 PM; however, the solicitation on page number 42, concerning the format for proposal parts II, III, and IV, specifically stated,

> "The electronic version shall be submitted on compact disc (CD). USB flash drives, floppy disks, and zip disks are not acceptable." Submission via email was not authorized. Additionally, had email been authorized, the electronic submission was not submitted in accordance with the solicitation requirements as "Schedule B" was not submitted in the proper format.
>
> 3. Government email correspondence indicating that the electronic submission discussed above would be acceptable was further reviewed by the contracting officer and legal office. During the course of that review, it was determined that, while good intentioned, that response lacked the authority to materially alter the proposal submission requirements contained in "ADDENDUM TO FAR 52.212-1—INSTRUCTIONS TO OFFERORS—COMMERCIAL ITEMS (Jan 2017)".
>
> 4. In the solicitation, FAR Provision 52.212-1(f)(2)(i) states that, with three potential exceptions, "Any proposal, modification, or revision, that is received at the designated Government office after the exact time specified for receipt of proposals is "late" and will not be considered . . . " In this situation, FAR Provision 52.212-1(f)(2)(i) further describes the potential exceptions, in which none of the exceptions apply; as the exceptions outline (A) that the proposal was not transmitted through an electronic commerce method authorized by the solicitation, (B) the proposal was not received at Sheppard AFB, TX and under the government's control prior to the time set for receipt of proposals, and (C) this proposal was not the only proposal received.
>
> 5. Therefore, FAR provision 52.212-1, contained in the solicitation, precludes the government from accepting your late proposal. Your proposal will not be further considered or evaluated.

AR at 502.

Following receipt of this rejection letter, plaintiff requested that defendant extend the formal deadline in order to accommodate the late delivery of its proposal, particularly in light of the representations made by the contract specialist that the late submission was "not a problem" and would be accepted upon delivery. See ECF No. 1 at 13-14. Defendant failed to respond to this request, and after numerous attempts to secure an answer, plaintiff concluded that defendant would not extend the due date for receipt of proposals. See id. at 14.

In light of that purported refusal, plaintiff filed this protest action. Plaintiff claims that defendant misled plaintiff, improperly rejected its proposal, and unreasonably

refused to extend the deadline for submissions. See id. at 14-20. Specifically, plaintiff seeks the following relief in its complaint:

> T Square respectfully requests that the Court:
>
> 1. Declare that the Air Force's rejection of T Square's proposal as late is arbitrary, capricious, and contrary to law;
>
> 2. Declare that the Air Force's refusal to extend the deadline for receipt of proposals for this Solicitation is arbitrary, capricious, and contrary to law;
>
> 3. Prohibit the Air Force from further evaluating proposals for this Solicitation pending resolution of this protest;
>
> 4. Reinstate T Square's proposal for consideration for award; and
>
> 5. Afford T Square such other and further relief as the Court may deem just and proper.

See ECF No. 1 at 20-21. In the present motion, plaintiff asks the court to "grant the relief requested in T Square's Complaint dated June 6, 2017 along with such other relief that the Court deems just and equitable." ECF No. 19 at 1.

## II. Legal Standards

Rule 52.1(c) of the Rules of the United States Court of Federal Claims (RCFC) provides for judgment on the administrative record. In reviewing a motion or cross-motions under RCFC 52.1(c), the court asks whether, given all the disputed and undisputed facts, a party has met its burden of proof based on the evidence in the record. Bannum, Inc. v. United States, 404 F.3d 1346, 1356-57 (Fed. Cir. 2005). The court must make factual findings where necessary. Id. The resolution of RCFC 52.1(c) cross-motions is akin to an expedited trial on the paper record. Id.

### A. Evaluating Standing to Protest

The Tucker Act grants this court jurisdiction

> to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement. . . . without regard to whether suit is instituted before or after the contract is awarded.

28 U.S.C. § 1491(b)(1) (2012).

Under this section, a plaintiff must demonstrate that it has standing as an "interested party," in order to establish this court's jurisdiction. See Myers Investigative & Sec. Servs., Inc. v. United States, 275 F.3d 1366, 1369 (Fed. Cir. 2002) (noting that plaintiff bears the burden of establishing standing). In determining whether the court has jurisdiction over a plaintiff's claims, the court "must accept as true all undisputed facts asserted in the plaintiff's complaint and draw all reasonable inferences in favor of the plaintiff." Trusted Integration, Inc. v. United States, 659 F.3d 1159, 1163 (Fed. Cir. 2011) (citing Henke v. United States, 60 F.3d 795, 797 (Fed.Cir.1995)).

As the Federal Circuit has held, the "interested party" requirement under the Tucker Act "imposes more stringent standing requirements than Article III." Weeks Marine, Inc. v. United States, 575 F.3d 1352, 1359 (Fed. Cir. 2009). Though the term "interested party" is not defined by the statute, courts have construed it to require that a protestor "establish that it '(1) is an actual or prospective bidder and (2) possess[es] the requisite direct economic interest.'" See id. (citing Rex Serv. Corp. v. United States, 448 F.3d 1305, 1308 (Fed. Cir. 2006)). In order to demonstrate economic interest in the pre-award context a plaintiff must show that it suffered a "non-trivial competitive injury which can be addressed by judicial relief." Id. at 1362.

B. Evaluating the Merits of the Protest

Assuming that the plaintiff has standing to proceed with a bid protest, the court's analysis of a "bid protest proceeds in two steps." Bannum, Inc. v. United States, 404 F.3d 1346, 1351 (Fed. Cir. 2005). The court first determines, pursuant to the Administrative Procedure Act of 1946 (ADA), 5 U.S.C. § 706(2)(A), standard of review, whether the "agency's action was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with [the] law." Glenn Def. Marine (ASIA), PTE Ltd. v. United States, 720 F.3d 901, 907-08 (Fed. Cir. 2013) (citing 28 U.S.C. § 1491(b)(4) (adopting the standard of 5 U.S.C. § 706)). If the court finds that the agency acted in error, the court then must determine whether the error was prejudicial. See Bannum, 404 F.3d at 1351.

Given the considerable discretion allowed contracting officers, the standard of review is "highly deferential." Advanced Data Concepts, Inc. v. United States, 216 F.3d 1054, 1058 (Fed. Cir. 2000). As the Supreme Court has explained, the scope of review under the "arbitrary and capricious" standard is narrow. See Bowman Transp., Inc. v. Arkansas-Best Freight System, Inc., 419 U.S. 281, 285 (1974). "A reviewing court must 'consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment," and "[t]he court is not empowered to substitute its judgment for that of the agency.'" Id. (quoting Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 416 (1971). See also Weeks Marine, 575 F.3d at 1368-69

(stating that under rational basis review, the court will "sustain an agency action evincing rational reasoning and consideration of relevant factors").

III. Analysis

A. Motion to Dismiss

Defendant argues that this case should be dismissed because plaintiff lacks standing. See ECF No. 20 at 19. As noted above, in order to establish standing, a plaintiff must be an actual or prospective bidder for the contract at issue, and must show that it had direct economic interest in the award. Weeks Marine, 575 F.3d at 1359.

Here, defendant does not challenge plaintiff's status as an actual bidder, but claims that it cannot demonstrate the requisite economic interest to establish standing. See id. at 20. Defendant argues that "[i]n order to demonstrate prejudice, a protestor must show that 'but for the error, it would have had a substantial chance of securing the contract.'" See id. (citing Labatt Food Serv., Inc. v. United States, 577 F.3d 1375, 1378 (Fed. Cir. 2009)). Defendant concludes, that plaintiff "has not been prejudiced because as a late offeror, it had zero chance of securing the contract." See id.

Defendant's argument widely misses the mark because it is premised on the wrong standard for demonstrating direct economic interest in the pre-award context. As the Federal Circuit has explained, the standard cited by defendant applies to post-award protests, but does not work in the pre-award context because "there is no factual foundation for a 'but for' prejudice analysis." Weeks Marine, 575 F.3d at 1361. Instead, in the pre-award context, to demonstrate direct economic interest a plaintiff must show it suffered a "non-trivial competitive injury which can be addressed by judicial relief." Id. at 1361.

In the court's view, the issue of standing here involves a relatively straight forward application of the general pre-award rule. Indisputably, plaintiff was an actual bidder. Moreover, plaintiff has alleged that defendant's misconduct led to the rejection of plaintiff's proposal without any substantive consideration, and thus eliminated plaintiff from the competition entirely. Should the court deem defendant's actions to be improper, it can provide redress to the plaintiff in the form of granting the relief requested in its motion for judgment on the administrative record. For these reasons, the court finds that plaintiff has shown—under the applicable legal standard—that it suffered a non-trivial competitive injury that can be addressed by judicial relief.

Thus, the court finds that plaintiff has standing to bring this case, and defendant's motion to dismiss is **DENIED**.

B. Motion for Judgment on the Administrative Record

Plaintiff has moved for judgment on the administrative record, and in the alternative to its motion to dismiss, defendant has cross-moved for such judgment. See ECF Nos. 19, 20. Plaintiff advances three independent bases for its position that defendant should have considered its proposal despite the late delivery of the paper copies required by the solicitation: (1) that the government control exception applies, excusing the late delivery, see ECF No. 19-1 at 26; (2) that defendant should have waived the late delivery as a minor informality, see id. at 31; and (3) that defendant violated several regulations when the contract specialist represented that the late delivery was acceptable, but later changed course and rejected the proposal, see id. at 33. In response, defendant counters each of plaintiff's arguments, and claims that defendant is entitled to judgment on the administrative record because it properly determined that plaintiff's proposal was ineligible for consideration due to its untimeliness. See ECF No. 20 at 20.

After a thorough review of the parties' submissions, and careful consideration of the applicable law, the court finds on this record that defendant erred in failing to consider whether to waive late delivery of plaintiff's paper copies as an informality or minor irregularity. The court further finds that plaintiff was prejudiced by defendant's actions. The court's reasoning is as follows.

As noted above, the court's analysis of a "bid protest proceeds in two steps." Bannum, Inc. v. United States, 404 F.3d 1346, 1351 (Fed. Cir. 2005). The court first determines, pursuant to the APA standard of review, whether the "agency's action was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with [the] law." Glenn Def. Marine, 720 F.3d at 907-08. In conducting this evaluation, the court will look to whether the agency set forth a rational basis for its decision, and whether the agency considered relevant factors in making that decision. See Bowman Transp., 419 U.S. at 285; Weeks Marine, 575 F.3d at 1368-69. If the court finds that the agency acted in error, the court then must determine whether the error was prejudicial. See Bannum, 404 F.3d at 1351.

The solicitation at issue here incorporates the Federal Acquisition Regulation (FAR) 48 C.F.R. § 52.212-1. Subsection (g) of that FAR provision provides that in making a contract award decision: "The Government may reject any or all offers if such action is in the public interest; accept other than the lowest offer; and waive informalities and minor irregularities in offers received." See AR 130-132. As plaintiff notes, the text of the regulation does not define the terms "informalities" or "minor irregularities." See ECF No. 19-1 at 32.

In an attempt to define the contours of those terms, the parties cite various points of authority. Plaintiff relies on this court's decision in Electronic On-Ramp, Inc. (EOR) v. United States, 104 Fed. Cl. 151, 166-168 (2012). In EOR, which was a pre-award

protest action, the solicitation required bidders to submit proposals both by email, on paper, and on compact disc. See id. at 156. The plaintiff successfully submitted the email version of the proposal, but its courier was unable to deliver the paper copies and the compact disc on time because he was not allowed access to the office at which the proposal was to be submitted. See id. at 156-157. The court concluded that the proposal should have been considered for two, independent reasons. First, it found that the government control exception applied. See id. at 162-166. And second, the court held that even if the government control exception did not apply, the government should have "waived the late delivery of the paper copy as a minor informality." Id. at 166. In coming to this conclusion the court reviewed the language of 48 C.F.R. § 52.215-1(f)(3), which, similar to 48 C.F.R. § 52.212-1(g), provides that "[t]he Government may waive informalities and minor irregularities in proposals received." 48 C.F.R. § 52.215-1(f)(3).

As part of its waiver analysis, the court noted in EOR, that the applicable regulations did "not provide any clarification on what types of 'informalities' or 'irregularities' can be waived." EOR, 104 Fed. Cl. at 166. The court then looked to similar language found in 48 C.F.R. § 14.405 for guidance. Section 14.405 states that "[a] minor informality or irregularity is one that is merely a matter of form and not of substance. It also pertains to some immaterial defect[s] in the bid . . . that can be corrected or waived without being prejudicial to other bidders." Id. On the basis of these regulations, the court concluded that the government could properly waive the failure to deliver timely copies of the proposal, so long as other offerors were not prejudiced. See EOR, 104 Fed. Cl. at 167.

The court identified—as chief among its concerns with allowing the consideration of a late proposal—an interest in the "fairness and the preservation of competition." Id. In analyzing whether accepting plaintiff's proposal was fair, the court focused on whether the submitted version of the proposal was complete, and whether the plaintiff had gained an advantage through the late submission of the paper copies, such as extra time to prepare the proposal. See id. at 167-68. Ultimately, the court concluded that the record before it demonstrated that the plaintiff had not gained a competitive advantage from its late delivery, and consideration of the proposal would not prejudice other offerors. See id. at 168. Additionally, the court observed that considering the proposal "would further the competitive process." See id.

According to defendant, plaintiff's reliance on EOR is misplaced. Defendant distinguishes the instant record on the basis that the solicitation in EOR required that the offerors submit electronic versions of proposals by email, while the solicitation at issue here requires electronic versions to be submitted on compact discs. As such, defendant argues, "T Square did not submit a timely version of its proposal through a delivery method authorized in the solicitation—rendering its proposal nonresponsive." ECF No. 20 at 25 (citing AR at 100, 139-140). Defendant maintains that, absent compliance with the solicitation, the proposal cannot be considered for award.

In support of its position, defendant cites two cases in which the court dismissed post-award protests for lack of standing when the disappointed bidder submitted a proposal that did not comply with the solicitation. See A&D Fire Protection, Inc. v. United States, 72 Fed. Cl. 126, 139 (2006) (holding that, in the post-award context, a disappointed bidder lacked standing to bring a protest action when its submission was nonresponsive to the solicitation); Bannum, Inc. v. United States, 2007 WL 5172433 (Fed. Cl. April 21, 2007) (holding that, in the post-award context, a protesting party lacked standing to bring the protest action because it could not show a substantial chance of receiving an award when its submission did not comply with the solicitation's substantive requirements).

The court finds defendant's position unpersuasive. As an initial matter, the cases cited by defendant are unhelpful to the court's analysis. Neither A&D, 72 Fed. Cl. 126, nor Bannum, 2007 WL 5172433, address the issue of "informalities" or "minor irregularities." The court also notes that it has previously held, at the government's own urging, that a procuring agency properly exercised its discretion under 48 C.F.R. 52.212-1(g) when it waived the solicitation's proposal format requirement and allowed the ultimate awardee to submit its proposal on paper rather than on compact disc. See Progressive Indus., Inc. v. United States, 129 Fed. Cl. 457, 473-74 (2016). As was the case in Progressive, the court is satified that "waiving, as an informality, the submission format requirement," falls within the scope of a proper exercise of agency discretion. Progressive Indus., 129 Fed. Cl. at 474.

The fact that an agency is permitted to waive the submission format requirement, of course, does not mean it is required to do so. In order to make a determination of whether defendant's refusal to grant plaintiff a waiver had a rational basis, given the relevant factors, the court must conduct a review of the facts at hand. See Bowman Transp., 419 U.S. at 285 (stating that "[a] reviewing court must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment") (internal citation omitted); Weeks Marine, 575 F.3d at 1368-69 (stating that under rational basis review, the court will "sustain an agency action evincing rational reasoning and consideration of relevant factors").

Both parties acknowledge in this case that the contract specialist had indicated, in writing, that the late delivery of plaintiff's paper copies and compact disc would be waived as inconsequential. Specifically, the contract specialist wrote that the delayed delivery of the paper copies and the compact disc was "not a problem, [as] we understand that FedEx deliveries are beyond your control. Your receipt from FedEx shows that you shipped your proposal prior to the due date/time so we will be able to accept the hard copies when they arrive, even if FedEx delivers them after 4:00 pm today." See ECF No. 1 at 10 (citing to ECF No. 1, Ex. 1). Based on this representation, plaintiff discontinued efforts to have a local employee print and deliver paper copies to the designated office.

See id., Ex. 6. Defendant then, after conceding the contract specialist's statements, reversed course, and rejected plaintiff's proposal specifically because of the late delivery. See AR at 502.

The letter rejecting plaintiff's proposal identified two problems. It stated: "Submission via email was not authorized. Additionally, had email been authorized, the electronic submission was not submitted in accordance with the solicitation requirements as 'Schedule B' was not submitted in the proper format." See id. Despite the mention here of the nonconformity of Schedule B, the focus of the remainder of the letter makes clear that the untimeliness of the physical submission was the primary basis for its rejection. According to defendant, it had no choice but to reverse course because 48 C.F.R. § 52.212-1 required it to reject late proposals, and no permitted exceptions applied.

The court recites, for ease of reference, the relevant part of the letter again here:

> 3. Government email correspondence indicating that the electronic submission discussed above would be acceptable was further reviewed by the contracting officer and legal office. During the course of that review, it was determined that, while good intentioned, that response lacked the authority to materially alter the proposal submission requirements contained in "ADDENDUM TO FAR 52.212-1—INSTRUCTIONS TO OFFERORS—COMMERCIAL ITEMS (Jan 2017)".
>
> 4. In the solicitation, FAR Provision 52.212-1(f)(2)(i) states that, with three potential exceptions, "Any proposal, modification, or revision, that is received at the designated Government office after the exact time specified for receipt of proposals is "late" and will not be considered . . . " In this situation, FAR Provision 52.212-1(f)(2)(i) further describes the potential exceptions, in which none of the exceptions apply; as the exceptions outline (A) that the proposal was not transmitted through an electronic commerce method authorized by the solicitation, (B) the proposal was not received at Sheppard AFB, TX and under the government's control prior to the time set for receipt of proposals, and (C) this proposal was not the only proposal received.
>
> 5. Therefore, FAR provision 52.212-1, contained in the solicitation, precludes the government from accepting your late proposal. Your proposal will not be further considered or evaluated.

AR at 502.

The court finds that the contracting officer's reasoning is, at best, incomplete. While it is true that the exceptions listed by defendant do in fact appear in 48 C.F.R. § 52.212-1(f)(2)(i), defendant wholly failed to address the possibility of waiver which appears in the very next subsection, 52.212-1(g). This omission from the articulated reason for rejecting plaintiff's proposal is particularly glaring in light of the email correspondence from the contract specialist indicating that the agency would waive its strict adherence to the submission format or the delivery deadline. And despite the fact that the regulation does not explicitly define what an agency should consider as a waivable "informality" or "minor irregularity," the agency here made clear to plaintiff its view of what constituted a minor—and thus an appropriately waivable—informality. As plaintiff stated in its briefing, "the plain terms of the Contract Specialist's written assurance indicate[] that the contracting office had decided that the delivery of the written copies was a 'minor informality.'" ECF No. 21 at 16.

That an agency can permissibly waive its strict adherence to a submission format as a minor informality comports with guidance previously set forth by this court. See EOR, 104 Fed. Cl. at 166 (noting that 48 C.F.R. § 14.405 states that "[a] minor informality or irregularity is one that is merely a matter of form and not of substance. It also pertains to some immaterial defect in the bid . . . that can be corrected or waived without being prejudicial to other bidders."); Progressive Indus., 129 Fed. Cl. at 474 (concluding that "waiving, as an informality, the submission format requirement," would be a proper exercise of agency discretion). In addition, the court observes that waiving the submission format requirement in this case would afford plaintiff no competitive advantage. The record indicates that plaintiff's email submission was complete, its paper copies and the compact disc had already been shipped, and plaintiff had no opportunity to make changes or improvements to its proposal. Furthermore, the award had not been made prior to the delivery of plaintiff's proposal, and the government's consideration of more proposals would tend to preserve the benefits gained from healthy competition. See EOR, 104 Fed. Cl. at 167 (identifying "fairness and preservation of competition" as the primary concerns as to whether informalities or irregularities should be waived to allow consideration of an additional proposal). The court finds problematic here that defendant apparently exercised its discretion in the first instance only to reverse its position without an explanation of why it changed its view on the specific matter of the appropriateness of a waiver. Accordingly, the court finds—on the facts of this case—that defendant erred in failing to consider and document whether a waiver of the late delivery of plaintiff's paper copies as a mere informality or minor irregularity was proper in this circumstance.

Having found an error, the court proceeds to the second step of the bid protest analysis to consider whether defendant's action was prejudicial. See Bannum, Inc., 404 F.3d at 1351 (stating that "if the trial court finds that the government's conduct fails the APA review under 5 U.S.C. § 706(2)(A), then it proceeds to determine, as a factual matter, if the bid protester was prejudiced by that conduct"). Here, plaintiff was denied any ability to compete for the contract award; it did not simply suffer a compromised

opportunity. Because defendant's failure to grant plaintiff a waiver resulted in the outright disregard of its proposal, the court finds that prejudice against plaintiff is established.

The court finds error in defendant's failure to adequately consider and document—in this particular circumstance—whether a grant of a waiver for the late delivery of its paper copies and compact disc, as an informality or minor irregularity, was proper. But the court makes no findings and draws no legal conclusions with regard to plaintiff's additional arguments relating to (1) the government control exception, see ECF No. 19-1 at 26, and (2) the violation of various regulations that govern fair treatment of offerors, see id. at 33.

For the reasons set forth above, plaintiff's motion for judgment on the administrative record is **GRANTED**, and defendant's cross-motion for judgment on the administrative record is **DENIED**.

C. Injunctive Relief

As noted above, in its motion for judgment on the administrative record, plaintiff asks that the court "grant the relief requested in T Square's Complaint dated June 6, 2017 along with such other relief that the Court deems just and equitable." ECF No. 19 at 1.[2] Two of plaintiff's requests involve injunctive relief. Specifically, plaintiff asks that the court: (1) "Prohibit the Air Force from further evaluating proposals for this Solicitation pending resolution of this protest," and (2) "Reinstate T Square's proposal for consideration for award." See ECF No. 1 at 20-21. As the Federal Circuit has stated,

> In deciding whether a permanent injunction should issue, a court considers: (1) whether, as it must, the plaintiff has succeeded on the merits of the case; (2) whether the plaintiff will suffer irreparable harm if the court withholds injunctive relief; (3) whether the balance of hardships to the respective parties favors the grant of injunctive relief; and (4) whether it is in the public interest to grant injunctive relief.

PGBA, LLC v. United States, 389 F.3d 1219, 1228-29 (Fed. Cir. 2004) (citation omitted).

---

[2] The court previously denied plaintiff's motion for temporary restraining order and motion for permanent injunction, ECF No. 4, as moot, upon agreement of the parties that the award would not be made before this protest action is resolved. See ECF No. 9. The court now considers the propriety of granting injunctive relief on the basis of the relief requested in the complaint, and carried forward to the motion for judgment on the administrative record.

Here, plaintiff has succeeded on the merits of its case. In addition, plaintiff has shown that absent injunctive relief, it will suffer irreparable harm in the form of a lost opportunity to compete for the award at issue. See, e.g., Fed. Acquisition Servs. Team, LLC v. United States, 124 Fed. Cl. 690, 708 (2016) ("It is well-established that the profits lost by an offeror because of the government's arbitrary or unlawful rejection of an offer constitute irreparable injury for purposes of injunctive relief."); Hosp. Klean of Tex., Inc. v. United States, 65 Fed. Cl. 618, 624 (2005) ("Here, absent injunctive relief, [the protestor] will lose the opportunity to earn the profit it would have made under this contract. Such loss of profit, stemming from a lost opportunity to compete for a contract on a level playing field has been found sufficient to constitute irreparable harm.") (citations omitted).

As to the balance of hardships, defendant voluntarily agreed that it would not award the subject contract until this protest is resolved. See ECF No. 9 at 1. It appears, then, that defendant would not labor under any specific or significant hardship in reconsidering its rejection of plaintiff's proposal. The only hardship defendant identifies in its briefing is a general concern for compromising "an efficient, fair, and consistent procurement process." ECF No. 20 at 36. Plaintiff, on the other hand, stands to suffer an immediate and considerable hardship if it is erroneously precluded from competing for this award. Moreover, in the court's view, addressing errors in the procurement process serves the principles of efficiency, fairness, and consistency that are of such concern to defendant. The balance of hardships here favors injunctive relief.

And finally, the court concludes that injunctive relief is in the public interest. As plaintiff explains, this court "has long recognized that the public interest lies in honest, open and fair competition in public procurement." ECF No. 19-1 (citing Cincom Sys., Inc. v. United States, 37 Fed. Cl. 266, 269 (1997)). See also Alion Sci. & Tech. Corp. v. United States, 74 Fed. Cl. 372, 376 (2006) ("It is well established that there is an overriding public interest in preserving the integrity of the federal procurement process by requiring government officials to follow procurement statutes and regulations.") (citation omitted); Metcalf Constr. Co. v. United States, 53 Fed. Cl. 617, 645 (2002) (noting the twin goals of preserving "public confidence and competition in the federal procurement process") (citation omitted). Defendant contends that an injunction would amount to "excessive judicial infringement upon the agency's discretion," and therefore, would not serve the public interest. Defendant can be confident that the court has no desire to unnecessarily involve itself in the agency's procurement process. But where, as here, defendant erred, it is both proper and in the public interest, for the court to step in and protect the integrity of the procurement process.

For all of these reasons, plaintiff has demonstrated that injunctive relief is appropriate.

IV. Conclusion

Plaintiff has demonstrated that it has standing to bring this case and that defendant's actions in rejecting its proposal were erroneous. Plaintiff has also shown that it was prejudiced by defendant's error. Plaintiff's bid protest is, therefore, sustained. In addition, plaintiff is entitled to injunctive relief. Accordingly, it is hereby **ORDERED** that:

(1) Plaintiff's motion for judgment on the administrative record, ECF No. 19, is **GRANTED**;

(2) Defendant's Motion to Dismiss, ECF No. 20, and defendant's cross-motion for judgment on the administrative record, ECF No. 20, are **DENIED**;

(3) Plaintiff's request for injunctive relief is **GRANTED**, and defendant is **ENJOINED** from awarding the contract at issue without first reevaluating the eligibility of plaintiff's proposal for consideration in light of this court's ruling on the merits of this protest action;

(4) The clerk's office is directed to **ENTER** final judgment in favor of plaintiff;

(5) On or before **October 20, 2017**, counsel for the parties shall **CONFER** and **FILE** with the Clerk's Office a **redacted copy** of this opinion, with any material deemed proprietary marked out and enclosed in brackets, so that a copy of the opinion can then be prepared and made available in the public record of this matter; and

(6) Each party shall bear its own costs.

IT IS SO ORDERED.

s/ Patricia E. Campbell-Smith
PATRICIA E. CAMPBELL-SMITH
Judge